UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PHYLLIS MARTINEZ,                                Case No. 3:14-cv-01487-AA

    Plaintiff,                                  OPINION AND ORDER

v.

CAROLYN COLVIN, Acting
Commissioner, Social Security
Administration, and the SOCIAL
SECURITY ADMINISTRATION,
and DANIEL HYATT,

    Defendants.

---

AIKEN, Judge:

Plaintiff filed suit alleging sexual harassment and hostile work environment claims under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-2. Defendants Colvin and the Social Security Administration (SSA)[1] now seek summary judgment pursuant to Federal Rule of Civil Procedure 56 on grounds that they cannot be held liable for any alleged harassment. The motion is granted.

---

[1] Defendant Colvin, as the "the head of the department, agency, or unit" in which the alleged discriminatory acts occurred, is the only properly named defendant. 42 U.S.C. § 2000e-16(c). Nonetheless, the agency is named in the caption and the court refers to the agency defendants collectively as the "SSA defendants."

1    - OPINION AND ORDER

BACKGROUND

Plaintiff began working for the SSA on September 5, 2004. Currently, she is a Senior Case Technician with the SSA in Portland, Oregon. Defendant Daniel Hyatt is a retired Administrative Law Judge (ALJ) who also worked in the Portland SSA office.

On May 30, 2012, plaintiff, for the first time, reported to her supervisors that Hyatt had sexually harassed her. Hager Decl. Ex. 1 (Martinez Aff. at 2, 4-5, 10). Plaintiff described periodic episodes of harassment by Hyatt, both in and out of the office, during the previous four years. Martinez Aff. at 6-9; Hager Decl. Ex. 8 (McNeff-Robinson Aff. at 3-4), Ex. 9 (Carter Aff. at 4-5). Specifically, plaintiff alleged that Hyatt made sexual comments and jokes to her via email and in person, slapped her backside throughout the four-year period of harassment, and tried to kiss her on two occasions. *See id.*

Tomina Michelle Carter and Kelly McNeff-Robinson were plaintiff's direct supervisors at the time of her complaint. The day after plaintiff reported the alleged harassment, McNeff-Robinson and Carter met with plaintiff and her union representative, and they offered her a vacant cubicle away from Hyatt. McNeff-Robinson also reported plaintiff's complaint to higher management and instructed Hyatt not to contact plaintiff. McNeff-Robinson Aff. at 4-6; Carter Aff. at 5. On May 31, 2012, McNeff-Robinson collected multiple written witness statements and forwarded them to regional management personnel. McNeff-Robinson Aff. at 5.

For approximately a week, plaintiff occupied the vacant cubicle offered to her. She then voluntarily moved back to her original workstation. Hager Decl. Ex. 11 (Martinez Dep. at 134-36); Martinez Aff. at 5; McNeff-Robinson Aff. at 5. During the investigation, McNeff-Robinson offered plaintiff other vacant cubicles, but plaintiff refused them. Martinez Dep. at 136, 147; McNeff-Robinson Aff. at 7. The SSA ultimately moved Hyatt to an office on the other side of

the building. Martinez Aff. at 6; McNeff-Robinson Aff. at 7; Carter Aff. at 4-5; Hager Decl. Ex. 19 (Schlappie Aff. at 5).

The alleged harassment by Hyatt ceased once plaintiff reported it. Martinez Aff. at 5, 12. Plaintiff makes no allegation that Hyatt spoke to or otherwise contacted her after he was informed of the harassment investigation and ordered not to contact plaintiff.

On June 13, 2012, plaintiff requested EEO counseling from the agency. SSA officials outside of Portland conducted an initial investigation and conducted thirteen interviews.

On July 25, 2012, the SSA completed its initial report and found that Hyatt acted inappropriately by swatting plaintiff's backside and by making sexually suggestive comments in the workplace. Hager Decl. Ex. 13 (Initial Report). However, the report concluded that unlawful sexual harassment did not occur. *Id.* at 3-4. The report found no *quid pro quo* harassment and that the unwelcome conduct was not sufficiently severe or pervasive to be unlawful. *Id.* at 4. The report recommended that Hyatt be disciplined; that Hyatt and plaintiff be advised that sexually suggestive comments are not appropriate; that Hyatt and plaintiff's workspaces be separated; and that Hyatt receive additional sexual harassment training. *Id.* As a result of the initial report, the SSA disciplined Hyatt and gave him additional sexual harassment training. The SSA also gave plaintiff and Hyatt work assignments that did not require them to interact and instructed Hyatt not to interact with plaintiff. Hager Decl. Exs. 16, 24, 25.

On October 29, 2012, the SSA notified plaintiff that the evidence was not sufficient to support a hostile work environment claim. Hager Decl. Exs. 14, 23 (Final Report).

Plaintiff appealed the SSA's findings to the EEOC. On June 19, 2014, an EEOC Administrative Judge ruled that plaintiff did not establish a basis for imputing liability to the SSA for Hyatt's conduct. Hager Decl. Ex. 22 (EEOC Decision).

On September 18, 2014, plaintiff filed suit in federal court asserting sexual harassment and sex discrimination claims.

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

## DISCUSSION

The Supreme Court has recognized "hostile environment" sexual harassment as prohibited sex discrimination under Title VII of the Civil Rights Act. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66-67 (1986). To establish a prima facie hostile work environment claim, plaintiff must show that: 1) she was subjected to "verbal or physical conduct" of a sexual nature; 2) the conduct was unwelcome; and 3) the conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004). The SSA defendants do not concede that plaintiff's allegations suffice to establish a prima facie case of hostile work environment. Regardless, defendants contend that plaintiff cannot establish liability on the part of the SSA.

A plaintiff may allege harassment against an employer under a theory of either vicarious liability or negligence. *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). If the alleged perpetrator of the harassment is a co-worker, the plaintiff must prove that the employer was negligent; if the perpetrator is a supervisor, the employer can be held vicariously liable for the harassment. *Nichols v. Azteca Restaurant Enter., Inc.*, 256 F.3d 864, 875 (9th Cir. 2001). An employer may assert an affirmative defense where the hostile environment is caused by a supervisor. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

The SSA defendants argue that Hyatt was not plaintiff's supervisor, and plaintiff must prove that the SSA was negligent in responding to her complaints. The SSA defendants further contend that plaintiff cannot establish negligence, because the SSA took corrective action immediately after plaintiff disclosed the alleged harassment.

For purposes of vicarious liability, a supervisor is one who is empowered to take "tangible employment actions" against the plaintiff. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). A tangible employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. The Supreme Court has contemplated vicarious liability for those with apparent supervisory authority, explaining that "[i]f, in the unusual case, it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one." *Id.* at 759.

Here, the SSA does not empower ALJs to take tangible employment actions against case technicians or any other SSA employee, and Hyatt never possessed such authority over plaintiff.

5    - OPINION AND ORDER

Hager Decl. Ex. 15 at 1-7, Ex. 20 at 8, Ex. 21 at 2. Further, plaintiff admitted that Hyatt was not her supervisor, and she cannot rely on his apparent authority. As described by plaintiff, she and Hyatt were coworkers during the period of the alleged harassment, and she was not in his "chain of command." Martinez Aff. at 2, 9; Martinez Dep. at 28-30, 93, 130-31, 165-66.

Plaintiff nonetheless argues that her position provides administrative support for ALJs such as Hyatt, and that an ALJ's review of her performance would affect her evaluations and potential advancement. Pl.'s Opp'n at 6. Plaintiff provides no evidence to support this assertion or her allegation that the "SSA effectively delegated the power to take tangible actions to the ALJs." *Id.* Accordingly, I find that Hyatt was a co-worker and that plaintiff must show that the SSA "knew or should have known of the harassment but did not take adequate steps to address it." *Swinton*, 270 F.3d at 803.

The undisputed evidence of record fails to establish negligence on the part of the SSA. It is undisputed that plaintiff did not report Hyatt's alleged harassment to the SSA until May 30, 2012, four years after it allegedly began. Plaintiff presents no evidence to suggest that the SSA knew or should have known about Hyatt's alleged harassment prior to her complaint on May 30, 2012; she told no one about Hyatt's alleged harassment and identifies no witnesses who observed it. Martinez Dep. at 24, 31, 132. Further, the SSA immediately began an investigation and took action to prevent contact between plaintiff and Hyatt. Plaintiff admits that no further harassment occurred after the SSA took such actions. Therefore, I find no negligence on the part of the SSA.

Even if Hyatt is considered plaintiff's supervisor and vicarious liability applies, the SSA has established an affirmative defense. An employer may establish an affirmative defense to vicarious liability when no tangible employment action has been taken against the plaintiff, and 1) "the employer exercised reasonable care to prevent and correct promptly any sexually

harassing behavior," and 2) the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807; *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1183-84 (9th Cir. 2005).

It is undisputed that the SSA defendants took no tangible employment action against plaintiff, and the SSA exercised reasonable care in preventing and promptly correcting the allegedly harassing behavior. Plaintiff does not dispute that the SSA has harassment policies and training for employees. Further, once plaintiff informed her supervisors of Hyatt's alleged harassment, the SSA immediately began an investigation, instructed Hyatt to avoid contact with plaintiff, and offered plaintiff a new workstation away from Hyatt. After plaintiff expressed dissatisfaction with the workstation options offered to her, the SSA moved Hyatt to another part of the building. The SSA ultimately disciplined Hyatt and required him to undergo additional sexual harassment training. Plaintiff concedes that the harassment ceased after she reported it.

Plaintiff responds that the SSA did not promptly address the situation, arguing that her supervisors lacked knowledge about investigating a hostile work environment claim. However, plaintiff's argument is based on a sole comment by McNeff-Robinson that she would perform "research" on the issue; plaintiff does not dispute that her supervisors did, in fact, take action and initiate an investigation. Plaintiff also argues that Hyatt sent her an email on May 31, the day after her complaint, and the SSA failed to take immediate action to avoid such contact. Again, plaintiff does not dispute that Hyatt was instructed to avoid contact with plaintiff, and she alleges no other contact by Hyatt. I do not find that one email from Hyatt the day after plaintiff's complaint constitutes a failure by the SSA to take corrective action. Finally, plaintiff complains that she was not offered an appropriate alternative workspace and that Hyatt was moved only at

7    - OPINION AND ORDER

her insistence. The record reflects that the SSA offered plaintiff at least one, if not two, alternative workstations, and that she declined them. Martinez Aff. at 5; McNeff-Robinson Aff. at 5, 7; Schlappie Aff. at 5. Regardless of her reasons for doing so, the SSA offered her workstation alternatives. After those alternatives were unsatisfactory, the SSA moved Hyatt. As a whole, plaintiff's complaints about the SSA's response do not negate the undisputed evidence establishing that the SSA took "reasonable care" in correcting the alleged harassment. Plaintiff's supervisors immediately reported her complaint to higher management, offered her a vacant cubicle, and instructed Hyatt not to contact her. Plaintiff also concedes that the harassment ceased.

Likewise, the record reflects that plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities provided. It is undisputed that plaintiff did not report the alleged harassment for four years, and that SSA had sexual harassment policies and trainings in place. Plaintiff maintains that no one in management would have believed her and Hyatt had convinced her that management was ineffective. Regardless, plaintiff failed to notify any supervisor about Hyatt's conduct and took no action to address the alleged harassment for over four years. Therefore, the SSA defendants have established an affirmative defense as a matter of law, and they cannot be held liable for Hyatt's alleged harassment. *See Hardage*, 427 F.3d at 1188-89.

Finally, although the SSA defendants do not seek summary judgment on plaintiff's claims against Hyatt, it is well-settled in the Ninth Circuit that individuals, including supervisory employees, cannot be held liable for damages under Title VII. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583 (9th Cir. 1993); *see also Hills v. Serv. Employees Int'l Union*, 520 Fed. App'x 555, 556 (9th Cir. 2013); *Woodson v. State of Cal.*, 2016 WL 524870, at *5 (E.D. Cal. Feb. 10, 2016).

Plaintiff brings her claims solely under Title VII. Pl.'s Compl. at 2, 4-6. Therefore, plaintiff's claims against Hyatt are dismissed as a matter of law.

## CONCLUSION

Defendant's Motion for Summary Judgment (doc. 14) is GRANTED, and plaintiff's claims against all defendants are DISMISSED.

IT IS SO ORDERED.

Dated this 4th day of March, 2016.

_____
Ann Aiken
United States District Court Judge

9   - OPINION AND ORDER